619 P.2d 847

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Joshua GARDNER and Thaddeus Gardner, Defendants–Appellees.**

**No. 4573.**

Court of Appeals of New Mexico.

Aug. 21, 1980.

Writ of Certiorari Denied Oct. 6, 1980.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for plaintiff–appellant.

Mark A. Hirsch, Taos, for Joshua Gardner.

Tony Lopez, Friedland, Simon, Lopez, Vigil & Nelson, Taos, for Thaddeus Gardner.

## OPINION

WOOD, Chief Judge.

Defendants' motion to suppress evidence was granted; the State appealed. Section 39–3–3(B)(2), N.M.S.A. 1978. There are two issues: (1) consent to search obtained in violation of administrative regulations, and (2) constitutional propriety of the search.

An indictment, filed in August, 1977, charged Joshua Gardner with trafficking in cocaine. Pursuant to a plea bargain, accepted by the trial court, Joshua pled guilty to possession of cocaine. Joshua was sentenced in April, 1978 to not less than one nor more than five years in the penitentiary; all but the first thirty days of this sentence was suspended. In connection with the suspension, Joshua was placed on probation for two years after serving the thirty–day sentence. The judgment, by Judge Wright, provides:

The Defendant is further subject to the following special terms of probation:

a. Defendant shall submit a urine sample at anytime upon the request of his probation officer.

b. Defendant shall submit to a search of his car, person or residence at anytime upon request of his probation officer.

c. Defendant shall not use or possess any drugs during the term of his probation.

General conditions of Joshua's probation required Joshua to obey state laws, and restricted his travel.

Skis and ski clothing were stolen from a shop in Taos. Police officials received confidential information that Joshua, or Thaddeus, or both, had attempted to sell the stolen items in Albuquerque. Joshua's probation officer was notified.

The probation officer, the police chief, and an investigator went to Joshua's residence on November 5, 1979. After being informed (or reminded) by his probation officer that submission to search was a con-

dition of probation, Joshua opened the trunk of his car. Items in the trunk were identified as stolen. The defendants were charged with receiving stolen property in violation of § 30–16–11, N.M.S.A. 1978.

Defendants moved to suppress the stolen items recovered from the trunk of Joshua's car.

*Consent to Search in Violation of Administrative Regulations*

The Manual of Instructions for Officers, issued by the State of New Mexico Probation Department provided:

Officers will not search the person, vehicle or home of clients. . . .

\* \* \* \* \* \*

If a search is necessary, then we should take our information to local law enforcement officials and they have their own procedures for securing and executing search warrants.

Judge Caldwell, after an evidentiary hearing, granted the motion to suppress, finding that the search of the car trunk was with the voluntary agreement of Joshua, however, Joshua's agreement was obtained upon the basis of the special condition of Joshua's probation that he submit to a search. The trial court also found:

3. That the Adult Probation Officer for this District, Gardner's immediate probation supervisor, acting under the color of his authority as a State Official, was the person who informed Gardner of the requirements of his probation agreement at the scene of the search and immediately prior to Gardner's acquiescence.

4. That at the time of giving such information, the Probation Officer was specifically prohibited by the regulations of his department from conducting urder his authority any search without a warrant, and therefore was prohibited from being present and participating in the search in the manner done in this case. He was therefore without any legal authority to communicate the probation requirements to the Defendant in the manner done in this case in order to elicit

Defendant's voluntary compliance to search.

This is not a case of a district judge refusing to give effect to decisions of another district judge. Compare *Miller v. City of Albuquerque*, 88 N.M. 324, 540 P.2d 245 (Ct.App. 1975). Judge Caldwell did not rule on the special probation conditions imposed by Judge Wright. Rather, Judge Caldwell ruled that the probation officer's participation in the search was in violation of administrative regulations and suppressed the evidence on that basis.

■ A New Mexico court has the duty to enforce an agency regulation when compliance with the regulation is mandated by the federal or state Constitutions or state law. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); see *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

■ Defendants point to no constitutional provision requiring probation officers to abstain from searches of probationers. They rely on statutory provisions that require the "director" to supervise probationers, direct the work of probation officers and formulate methods of supervision. See §§ 31–21–5(E) (1980 Cum.Supp.) and 31–21–7, N.M.S.A. 1978. These statutory provisions do not, however, require a court to enforce the provisions of the manual concerning abstention from searches by probation officers.

Section 31–21–21, N.M.S.A. 1978 provides:

The board [of probation and parole, § 31–21–5(D), supra] shall adopt general regulations concerning the conditions of probation which apply in the absence of specific conditions imposed by the court. All probationers are subject to supervision of the board unless otherwise specifically ordered by the court in the particular case. Nothing in the Probation and Parole Act [31–21–3 to 31–21–19 NMSA 1978] limits the authority of the court to impose or modify any general or specific condition of probation.

Instead of requiring compliance with the provisions of the manual, § 31–21–21, supra, authorizes specific conditions of probation, imposed by the court, which override any general administrative regulations.

■ A specific condition imposed by Judge Wright was that Joshua submit to a search of his car upon request of his probation officer. That specific provision overrode manual provisions directing that probation officers abstain from searches of probationers. The grounds stated by Judge Caldwell, for suppressing the evidence, were erroneous.

### Constitutional Propriety of the Search

■ Defendants recognize that a probationer's rights concerning searches are more limited than the rights of a person not on probation. We agree. *United States v. Consuelo–Gonzalez*, 521 F.2d 259 (9th Cir. 1975) states:

> [S]ome forms of search by probation officers are not only compatible with rehabilitation, but, with respect to those convicted of certain offenses such as possession and distribution of narcotics, are also essential to the proper functioning of a probationary system.

Defendants also assert that in limiting a probationer's rights concerning searches, the limitation must be reasonable. Again, we agree. *Consuelo–Gonzalez*, supra.

Defendants claim that Judge Caldwell reached the correct result in suppressing the evidence because the special conditions of probation were unreasonable. We disagree.

Defendants advance both legal and factual arguments in support of their unreasonableness claim.

One legal argument suggests that Judge Wright lacked authority to impose, as a condition of probation, the requirement that Joshua submit to a search upon request of his probation officer. Joshua was placed on probation in connection with a suspended sentence. Section 31–20–6(F), N.M.S.A. 1978 states that a defendant may be required to satisfy conditions "reasonably related to his rehabilitation."

■ Another legal argument is that the search requirement was not reasonably related to Joshua's rehabilitation. To be reasonably related, the probation condition must be relevant to the offense for which probation was granted. *State v. Holland*, 91 N.M. 386, 574 P.2d 605 (Ct.App. 1978). The special conditions of probation were to refrain from use or possession of drugs, submission of urine samples upon request, and submission to search upon request. Probation conditions reasonably related to rehabilitation must, of necessity, be flexible, because of uncertainty about how rehabilitation is accomplished. *Consuelo–Gonzalez*, supra. A condition of probation which requires a prior narcotics offender to submit to search is reasonably related to the probationer's prior criminal conduct and is aimed at deterring or discovering subsequent criminal offenses. *State v. Jeffers*, 116 Ariz.App. 192, 568 P.2d 1090 (1977); *People v. Mason*, 97 Cal.Rptr. 302, 488 P.2d 630 (1971). The search requirement was reasonably related to Joshua's rehabilitation after his conviction of possessing cocaine.

Another legal argument is that the search condition imposed by Judge Wright does not use the word "reasonable". Because of the absence of the word "reasonable" in the special condition, defendants contend the condition, as actually imposed, was an "unqualified right to . . . search". The requirement to submit to a search must be "reasonable" both under the Constitution, *Consuelo–Gonzalez*, supra, and under the statute, § 31–20–6(F), supra.

■ Defendants may also be contending, as a matter of law, that the search condition is too broad to be enforced. If so, the contention is without merit. The condition does not require submission to search upon the request of police officers, but only upon the request of the probation officer. *Consuelo–Gonzalez*, supra. The requirement to submit to search "at any time" is subject to the requirement that the "time" be reasonable. Compare *United States v. Jeffers*, 573 F.2d 1074 (9th Cir. 1978).

Defendants suggest, as a matter of fact, that the search was unreasonable both as to time and manner. Nothing supports this claim. The probation officer, the police chief and the investigator went to Joshua's residence about noon and explained why they were there. Joshua did not want to open the trunk of his car, explaining that the contents of the trunk belonged to Thaddeus and Thaddeus should be the one to open the trunk. When reminded of the search condition, Joshua opened the trunk. This evidence shows reasonableness, both in time and manner.

Defendants assert "the State made no attempt to establish, nor did it introduce any evidence, that the search ... was made within the probationary process." It was defendants' motion to suppress, not the State's. It was defendants, not the State, who had the burden of coming forward with evidence sufficient to raise an issue as to the "illegal search and seizure" claimed in the motion. See *State v. Lujan*, 87 N.M. 400, 534 P.2d 1112 (1975); *State v. Cervantes*, 92 N.M. 643, 593 P.2d 478 (Ct.App. 1979). Joshua's trial attorney attempted to meet this burden. It is appellate counsel who argue, incorrectly, that the state had the initial burden of producing evidence.

Defendants point to no evidence that the search was outside the scope of the probationary process. The only evidence is that the probation officer questioned Joshua concerning the possibility of violating general conditions of Joshua's probation before the probation officer utilized the search condition. The evidence shows a search within proper probationary supervision.

The police chief and the investigator were primarily concerned with a new criminal offense, that of disposing of stolen property. The probation officer was concerned with the possible violation of several of the general conditions of Joshua's probation. The fact that there was cooperation between the probation officer and the police did not make the search illegal, because it was requested by the probation officer.

When the search is at the probation officer's request, as it was in this case, the search was reasonable "if the probation officer believes that a search is necessary to perform his duties properly." *State v. Jeffers*, supra. This sufficiently relates the probation officer's activity to the probationary process.

An additional question concerning the probation officer's activity would go to whether, in fact, the probation officer's activity was improper because a subterfuge for a criminal investigation by the police. As stated in *Consuelo–Gonzalez*, supra:

[A] proper visitation by a probation officer does not cease to be so because he is accompanied by a law enforcement official. Nor is an ordinary law enforcement official precluded from seeking the probationer's consent to conduct a search provided no coercion, actual or threatened, is employed. The probationer's refusal to accede to such a request makes it necessary either that the matter be referred to the probation officer or that a warrant be obtained. However, under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system "a subterfuge for criminal investigations." See *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975).

There is no evidence, and no suggestion, that in fact the probation officer's request was a subterfuge for a police investigation.

The order suppressing evidence is reversed. The cause is remanded for trial.

IT IS SO ORDERED.

WALTERS and ANDREWS, JJ., concur.